IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DEMIQOU WILSON, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-24-1660 |
| CREALLY CO II, et al., | * | |
| Defendants. | * | |

***

# MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Correctional Officer II Jordan Crilly's Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 23).[1] The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons outlined below, the Court will grant Crilly's Motion, construed as one for summary judgment.

## I.   BACKGROUND

### A.   Factual Background[2]

Self-represented Plaintiff Demiquo Wilson, currently incarcerated at Roxbury Correctional Institution ("RCI"), alleges that another inmate assaulted him on June 14,

---

[1] Defendant Officer Jordan Crilly is the sole named defendant in the Amended Complaint, (Am. Compl. at 2–3, ECF No. 6), which supersedes the original Complaint, see Young v. City of Mt. Ranier, 238 F.3d 567, 572 (4th Cir. 2001) (citations omitted); therefore, the Clerk will be directed to terminate the remaining defendants not named in the Amended Complaint. The Clerk also will be directed to amend the docket to reflect the correct the spelling of Plaintiff's first name, Demiquo (see Am. Compl. at 2), and Defendant's last name, Crilly (Mot. Dismiss or for Summ. J. at 1 n.1, ECF No. 23).

[2] Unless otherwise noted, the Court takes the following facts from the Amended Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

2022, while he was housed at the Maryland Correctional Training Center ("MCTC"). (Am. Compl. at 2, 4, ECF No. 6).[3] Wilson alleges that Defendant Crilly, a Correctional Officer at MCTC, "watched as the other inmate heated up some type of concoction, [made] his way toward [him], and douse[d] him with it." (Id. at 4–5). Wilson alleges that prior to the assault, Crilly observed him in an altercation with the other inmate, but Crilly "avoided preventing any of this situation from unfolding when he knew something was about to transpire due to the heated altercation." (Id.). Wilson states that he suffered first and second-degree burns to his face and hands as a result of the attack and that he still has substantial loss of vision. (Id. at 5).

      Wilson filed Requests for Administrative Remedy ("ARP") on January 9 and 12, 2024, regarding the June 14, 2022, attack. (ARP Requests at 3–7, ECF No. 26). In both ARPs, Wilson states that he was sitting at a table in the recreation hall when someone ran up and threw something hot on him as he was tying his shoes. (Id.). He states that he was taken to the Emergency Room and hospitalized for approximately one week, after which he was admitted to the infirmary at the Maryland Correctional Institution-Hagerstown for six to eight weeks and then placed on administrative segregation. (Id.). On January 11, 2024, the Facility ARP Coordinator dismissed the first ARP with instructions to resubmit with additional information. (Id. at 6). On January 17, 2024, the Facility ARP Coordinator dismissed the second ARP because "the request was not received within the established

---

[3] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Files ("CM/ECF") system

timeframe." (Id. at 3). Both ARPs noted the Warden's responses can be appealed. (Id. at 3, 6). There is no evidence that Wilson appealed the dismissals or pursued the ARPs further.[4]

**B.    Procedural History**

On June 6, 2024, Wilson filed a Complaint, naming Correctional Officers John Doe 1, 2, and 3 and Supervising Officer as defendants. (ECF No. 1). On July 19, 2024, the Court noted that the allegations in Wilson's Complaint were insufficient to impose liability on the officers on duty and that Wilson did not provide enough information to identify the John Doe defendants. (July 19, 2024 Order at 2, ECF No. 5). In accordance with the Court's Order, Wilson filed an Amended Complaint on August 1, 2024, in which he identifies Crilly as the sole defendant. (Am. Compl. at 1–3). On August 21, 2025, Crilly filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 23), which he later supplemented on March 29, 2023. (ECF No. 26).[5] On September 10, 2025, Wilson filed a "Motion to Dismiss or Summary Judgment," which the Court construes as an Opposition to Crilly's Motion. (ECF No. 28). On November 14, 2025, Crilly filed a consolidated Opposition to Wilson's "Motion" and Reply in Support of Crilly's Motion to Dismiss or for Summary Judgment. (ECF No. 37).

---

[4] Joi Bell, Correctional Case Management Specialist II at the Maryland Department of Public Safety and Correctional Services ("DPSCS"), reviewed records in search of appeals of ARPs filed by Wilson from June 2022 to August 2025 and found that Wilson did not file any ARP appeals during that time period. (Bell Decl. at 1, ECF No. 23-6). Robin Woolford, Deputy Director of the DPSCS Incarcerated Individual Grievance Office ("IIGO"), reviewed records and determined that Wilson did not file any grievances with the IIGO between June 14, 2022, and June 14, 2025, regarding the incident at issue. (Woolford Decl. at 1, ECF No. 23-7).

[5] Crilly also filed a Motion to Seal the video recording of the incident, which will be granted. (ECF No. 25).

## II. DISCUSSION

**C.** <u>**Conversion**</u>

Defendant's Motion is styled as a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for Summary Judgment under Federal Rule of Civil Procedure 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. See <u>Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.</u>, 788 F.Supp.2d 431, 436–37 (D.Md. 2011), <u>aff'd</u>, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" <u>Wells-Bey v. Kopp</u>, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Fed. Prac. & Proc. § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. See <u>Greater Balt. Ctr. For Pregnancy Concerns, Inc. v. Mayor and City Council of Balt.</u>, 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See <u>Moret v. Harvey</u>,

4

381 F.Supp.2d 458, 464 (D.Md. 2005) (citing Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998)).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d).

"The Fourth Circuit places 'great weight' on the affidavit requirement," Nautilus Ins. Co. v. REMAC Am., Inc., 956 F.Supp.2d 674, 683 (D.Md. 2013) (quoting Evans, 80 F.3d at 961); however, non-compliance may be excused "if the nonmoving party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary," Harrods, 302 F.3d at 244. Courts place greater weight on the need for discovery "when the relevant facts are exclusively in the control of the opposing party," such as "complex factual questions about intent and motive." Id. (quoting 10B Wright, Miller & Kane, Fed. Prac. & Proc. § 2741, at 419 (3d ed. 1998) (internal quotation marks omitted)).

5

Nonetheless, a Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011) (citation omitted). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. of Trs, 55 F.3d 943, 954 (4th Cir. 1995)).

In this case, under Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Court notified Wilson of his right to respond to Crilly's Motion and advised that he may file affidavits, declarations, and exhibits along with his response. (See Rule 12/56 Notice at 1, ECF No. 27). Wilson's Motion to Dismiss or Summary judgment is construed, in part, as a response in opposition to Crilly's Motion. (ECF No. 28). Accordingly, the Court will construe Crilly's Motion as one for summary judgment and will consider documents outside of the pleadings.

**D.     Summary Judgment**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

6

stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing that there is a genuine dispute of material fact. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co., LLC v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the

nonmovant has failed to make a sufficient showing on an essential element of his case where he has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (quoting Anderson, 477 U.S. at 247).

### 1. Analysis

Crilly asserts that the Court should grant his Motion because 1) he is immune from suit in his official capacity under the Eleventh Amendment; 2) Wilson failed to exhaust his administrative remedies prior to filing suit; 3) Wilson fails to state a claim; 4) Crilly is immune from State tort claims; and 5) Crilly is entitled to qualified immunity. (Mot Dismiss or Summ. J. ["Mot. Summ. J."] at 9–20, ECF No. 23-1). For the reasons stated below, the Court will grant Crilly's Motion because Wilson did not exhaust his administrative remedies and, consequently, the Court will not address Crilly's other arguments or Wilson's unrelated arguments.

Crilly contends that Wilson's claims fail under the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, because he did not properly present his claims through the administrative remedy procedure. (Mot. Summ. J. at 10–12). The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002); see also Chase v. Peay, 286 F.Supp.2d 523, 527–28 (D.Md. 2003), aff'd, 98 F.App'x 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading standard on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. See Jones v. Bock, 549 U.S. 199, 216 (2007); see also Anderson v. XYZ Corr. Health Services, Inc., 407 F.2d 674, 682 (4th Cir. 2005). A claim that has not been exhausted may not be considered by this Court. See Jones, 549 U.S. at 220.

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. Moore v. Bennette, 517 F.3d 717, 725, 729 (4th Cir. 2008); see also Langford v. Couch, 50 F.Supp.2d 544, 548 (E.D.Va. 1999) ("The second PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." Woodford v. Ngo, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so properly (so that the agency addresses the

9

issues on the merits)." Id. at 90 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Maryland Department of Public Safety and Correctional Services' ("DPSCS") Incarcerated Individual Grievance Office ("IIGO") against any Division of Correction ("DOC") official or employee. Md. Code Ann., Corr. Servs. § 10-206(a). To have a grievance approved by the IIGO, the prisoner must follow the institutional ARP process before filing a grievance with the IIGO. See id. § 10-206(b). Inmates housed at an institution operated by DPSCS may avail themselves of the administrative grievance process designed for inmate complaint resolution. See generally id. § 10-201, et seq.; Md. Code Regs. ("COMAR") 12.07.01.01B(1) (defining an ARP).

A prisoner in a DOC institution must file an ARP with the facility's managing official within thirty days of the date on which the incident occurred, or within thirty days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B). If the managing official denies the ARP, the prisoner has thirty days to file an appeal with the Commissioner of Correction. Id. 12.02.28.14(B)(5). If the Commissioner of Correction denies the appeal, the prisoner has thirty days to file a grievance with the IIGO. Id. 12.02.28.18. The prisoner must include in the grievance copies of the initial request or administrative remedy, the Warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. Id. 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IIGO may dismiss

it without a hearing. Md. Code Ann., Corr. Servs. § 10-207(b)(1); see also COMAR 12.07.01.07(B). An order of dismissal constitutes the final decision of DPSCS for purposes of judicial review. Md. Code Ann., Corr. Servs. § 10-207(b)(2)(ii). An inmate has not exhausted her administrative remedies until she has pursued her grievance through all levels. See Woodford, 548 U.S. at 90; see also Gibbs v. Bureau of Prisons, 986 F.Supp. 941, 943–44 (D.Md. 1997).

Failure to exhaust may be excused in cases where the administrative procedure is not available. Ross v. Blake, 136 S.Ct. 1850, 1858 (2016) (holding that an inmate "must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). The Supreme Court identified three circumstances when an administrative remedy is unavailable: when (1) officers are "unable or consistently unwilling to provide relief to aggrieved inmates," (2) the procedure is "so opaque that it becomes, practically speaking, incapable of use," or (3) prison administrators actively "thwart" inmates from filing grievances. Ross, 136 S.Ct. at 1859–60.

Here, Wilson filed two ARP requests on January 9 and 12, 2024, regarding the June 14, 2022 incident at issue in the Amended Complaint. (ARP Requests at 3–7). The Facility ARP Coordinator dismissed the first request and provided instructions to submit additional information. (Id. at 6). The Facility ARP Coordinator dismissed the second request as untimely. (Id. at 3). Wilson did not appeal either ARP dismissal to the Commissioner of

11

Correction nor did he file any grievances with the IIGO. (See generally Bell Decl.; Woolford Decl.).

For his part, Wilson admits that he did not exhaust administrative remedies. (Pl.'s Mot. Dismiss or for Summ. J. at 4–5, ECF No. 28). Wilson states that he could not file an ARP in a timely manner because he was in the hospital and then the infirmary for nearly six weeks following the assault on June 14, 2022. (Id. at 5). He states that the injury to his hand prevented him from being able to write the ARP during his time in the hospital and infirmary, which extended beyond the thirty-day period for filing an ARP. (Id.). Wilson, however, does not allege that he was prevented from presenting this argument to the Commissioner of Correction in an appeal of the ARP that the Facility ARP Coordinator dismissed as untimely. Furthermore, he argues only that he was prevented from filing an ARP during his admission to the hospital and infirmary, (id.), and does not contend that he was prevented from availing himself of the ARP process during the following 18 months. The evidence in the record, together with Wilson's own admission, shows that he has not exhausted his administrative remedies.

Accordingly, while Crilly has moved for summary judgment and is entitled to the same, and the Court has considered evidence attached to the motion in reaching the conclusion herein, the Fourth Circuit has advised that plaintiffs such as Crilly—at this particular procedural posture—are entitled to refile should exhaustion become complete. See Moss v. Harwood, 19 F.4th 614, 623 n.3 (4th Cir. 2021) (collecting cases). As a result, Crilly's Motion, construed as a motion for summary judgment, will be granted and the Amended Complaint will be dismissed without prejudice under Fourth Circuit precedent.

### III.     CONCLUSION

For the foregoing reasons, Crilly's Motion (ECF No. 23), construed as a Motion for Summary Judgment, will be granted and the Amended Complaint will be dismissed without prejudice. Wilson's Motion to Dismiss or for Summary Judgment (ECF No. 28) will be denied. The Clerk will be directed to close this case. A separate Order follows. Entered this 25th day of February, 2026.

/s/
George L. Russell, III
Chief United States District Judge